**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| **ULAS JAMES OZTURK,** | |
| **Plaintiff,** | |
| **v.** | **Civil Action No. 13-5463 (ES) (JAD)** |
| **UNITED PARCEL SERVICE, INC.,** | **OPINION** |
| **Defendant.** | |

**SALAS, DISTRICT JUDGE**

Pending before the Court is Defendant United Parcel Service, Inc.'s ("Defendant" or "UPS") motion for summary judgment, or, in the alternative, to dismiss the Second Amended Complaint with prejudice. (D.E. No. 36-1). The Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332. The Court has considered the parties' submissions and decides the motion without oral argument pursuant to Federal Rule of Civil Procedure 78(b). For the reasons set forth below, the Court grants Defendant's motion for summary judgment.

## I.    BACKGROUND

This matter was initially filed on July 26, 2013, in the Superior Court of New Jersey, Law Division, Hudson County. (D.E. No. 1 at 1). On September 13, 2013, the action was removed to this Court on the basis of diversity jurisdiction pursuant to 28 U.S.C. § 1332. (*Id.*).

***First Count.*** Plaintiff Ulas James Ozturk ("Plaintiff") was employed part-time as a UPS package handler from 2006 until May 20, 2013, when his employment was terminated. (D.E. 29, Second Amended Complaint, First Count ("Sec. Am. Compl., First Count") ¶ 1). Prior to May 2013, Plaintiff arranged to have his employment transferred from Saddle Brook, New Jersey, to a

location operated by UPS in West Palm Beach, Florida.  (*Id*. ¶ 2).  Defendant agreed to the transfer, and Plaintiff worked at the Florida location for part of the day on or about May 20, 2013.  (*Id*. ¶ 3).

On or about May 20, 2013, Plaintiff sought to cancel the transfer to Florida "for personal reasons regarding his family."  (*Id*. ¶ 4).  Plaintiff spoke to Catricia McGhee, a representative of Defendant in Human Resources, "who did inform [Plaintiff] that the transfer back to New Jersey, or cancellation of the transfer to Florida, could and would be arranged, and [P]laintiff could resume his employment in Saddle Brook, New Jersey, with [Defendant] on or about May 28, 2013."  (*Id*. ¶ 5).  Additionally, Mike G., a manager for Defendant, told Plaintiff "that he was aware that the transfer to Florida had been canceled."  (*Id*. ¶ 6).

Plaintiff returned to work at Defendant's New Jersey location on or about May 28, 2013.  (*Id*. ¶ 7).  Upon his return, Mike G. informed him that "his name was not in the system" and that "he could not work until his name was logged into the system."   (*Id*.).  On May 30, 2013, Defendant's Human Resources Supervisor, Linda, told Plaintiff "he had forfeited his job in Florida and could not return."  (*Id.* ¶ 8).  Plaintiff contends that Defendant must be estopped under the principles of promissory estoppel because "he relinquished the opportunity to continue to work in Florida, based upon the promise or assurance that he could return to work for UPS in New Jersey."  (*Id*. ¶¶ 9-11).

**Second Count.**  Plaintiff, a practicing Muslim who openly expressed his religious beliefs to his coworkers and managers, also asserts a claim of religious discrimination under the New Jersey Law Against Discrimination, N.J.S.A. 10:5-1, *et seq.*  (D.E. 29, Second Amended Complaint, Second Count ("Sec. Am. Compl., Second Count") ¶¶ 1-12).  Specifically, Plaintiff contends (among other things) that (i) "his practice of the religion of Islam as a Muslim

2

American subjected him to repeated incidents of harassment, ridicule and a hostile work environment" (*id.* ¶ 5); (ii) he was subjected to "racial slurs about Muslims," including "questions about whether his parents owned oil refineries" and "why he was not wearing a turban" (*id.* ¶ 6); (iii) he was "deliberately denied use of the bathroom" and "was required to clock out before he was permitted to use the bathroom" (*id.* ¶ 7); (iv) he "was accused of working slower on his job throughout the month of Ramadan each year" (*id.* ¶ 8); and (v) he "object[ed] to his Supervisors and Managers of the treatment to which he was subjected" to no avail (*id.* ¶ 9). Plaintiff thus argues that "the termination of his employment, in accordance with the facts set forth in the First Count, was caused in part by the hostility expressed towards him as a Muslim." (*Id.* ¶ 10).

   ***Collective Bargaining Agreement.*** Plaintiff's employment was governed by a Collective Bargaining Agreement ("CBA") in effect from December 19, 2007 to July 31, 2013, between Teamsters Local Union 177 (to which Plaintiff belonged) and UPS. (D.E. No. 36-3 at 2). The CBA established wages, hours, and other terms and conditions of employment for union-represented employees. (*See* D.E. Nos. 36-4 & 36-5). The CBA comprises a National Master Agreement ("NMA") and Local 177 Supplement Agreement ("Local Supplement"). (*See* D.E. Nos. 36-4 & 36-5). Article 22, Section 6 of the NMA addresses part-time union-represented employee transfer requests. (D.E. No. 36-5 at 42-43).[1] Article 7 of the NMA and Article 47 of the Local Supplement both set forth the procedures for adjudicating discharges through the parties' agreed-upon grievance procedures. (D.E. No. 36-5 at 18-19; D.E. No. 36-4 at 20-21). Finally, both the NMA and the Local Supplement set forth a multi-step grievance and arbitration procedure to resolve disputes that may arise regarding employees covered by the CBA. (D.E. No. 36-5 at 18-22; D.E. No. 36-4 at 12-13).

---

[1]      The Court's citations refer to the ECF-generated page numbers that appear in the header of the documents.

*Procedural History.*   On June 4, 2015, Defendant filed a motion to dismiss the Second Amended Complaint with prejudice.  (D.E. No. 30).  On March 29, 2016, this Court converted Defendant's motion to dismiss to a motion for summary judgment and ordered the parties to re-brief the issues pursuant to Federal Rule of Civil Procedure 56.  (D.E. No. 35).  On May 2, 2016, Defendant filed the instant motion for summary judgment, or, in the alternative, to dismiss.  (*See* D.E. No. 36-1, Memorandum of Law in Support of Defendant's Motion for Summary Judgment or in the Alternative to Dismiss the Second Amended Complaint with Prejudice ("Def. Mov. Br.")).  Plaintiff opposed Defendant's motion on June 3, 2016. (D.E. No. 38, Plaintiff's Brief Opposing Defense Motion for Summary Judgment ("Pl. Opp. Br.")).   On June 13, 2016, Defendant filed a reply.  (D.E. No. 39, Reply Memorandum in Support of Defendant's Motion for Summary Judgment ("Def. Reply Br.")).  The motion is now ripe for adjudication.

## II.    LEGAL STANDARD

### A.  Summary Judgment

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c); *see also Azur v. Chase Bank, USA, Nat'l Ass'n*, 601 F.3d 212, 216 (3d Cir. 2010).[2]  A genuine issue of material fact exists for trial when—in viewing the record and all reasonable inferences drawn from it in the light most favorable to the non-movant—a reasonable finder of fact could return a verdict for the non-movant.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  "To be material, a fact must have the potential to alter the outcome of the case."  *DeShields v. Int'l Resort Props.*, 463 F. App'x 117, 119 (3d Cir. 2012).

---

[2]         Unless otherwise indicated, all internal citations and quotation marks are omitted, and all emphasis is added.

The movant bears the burden of establishing that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant meets this burden, the non-movant must set forth specific facts that demonstrate the existence of a genuine issue for trial. Fed. R. Civ. P. 56(e); *Celotex*, 477 U.S. at 324; *Azur*, 601 F.3d at 216. Federal Rule of Civil Procedure 56(c) mandates the entry of summary judgment against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. A scintilla of evidence in support of the non-movant's position is insufficient to oppose a summary judgment motion successfully; instead, "there must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson*, 477 U.S. at 252. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ruling on a motion for summary judgment . . . ." *Id.* at 255.

### B.  Labor Management Relations Act

Section 301(a) of the Labor Management Relations Act ("LMRA") states, in relevant part, "[s]uits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce . . . may be brought in any district court of the United States having jurisdiction of the parties . . . ." 29 U.S.C. § 185(a). Section 301(a) "calls on the federal courts to create a uniform federal common law of collective bargaining, with the primacy of arbitral resolution of industrial disputes as its centerpiece." *Voilas v. Gen. Motors Corp.*, 170 F.3d 367, 372 (3d Cir. 1999). As such, "state laws that might produce differing interpretations of the parties' obligations under a collective bargaining agreement are preempted." *Id.* The Supreme Court agreed that "when resolution of a state-law claim is substantially dependent upon analysis of the terms of an agreement made between the

parties in a labor contract, that claim must either be treated as a § 301 claim or dismissed as pre-empted by federal labor-contract law." *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 220 (1985).  Nevertheless, "[t]he full scope of the pre-emptive effect of federal labor-contract law remains to be fleshed out on a case-by-case basis." *Id.*

## III.   DISCUSSION

### A.  First Count: Promissory Estoppel

The First Count of Plaintiff's Complaint alleges that Defendant must be estopped under the principles of promissory estoppel because Plaintiff "relinquished the opportunity to continue to work in Florida, based upon the promise or assurance that he could return to work for UPS in New Jersey."  (Sec. Am. Compl., First Count ¶¶ 9-11).

#### i.    *The First Count Requires Interpretation of the CBA*

Defendant argues that federal labor law preempts the Second Amended Complaint and thus the Court should grant summary judgment, in part, because Plaintiff's claims require interpretation of the CBA, and the CBA precludes Plaintiff's assertion of a promissory estoppel claim altogether. (Def. Mov. Br. at 15-18).   Alternatively, Defendant argues, the Second Amended Complaint should be dismissed under Federal Rule of Civil Procedure 12(b)(6).  (*Id.* at 18-30).

Plaintiff counters that (i) "the principles of state law regarding issues of promissory estoppel are applicable without regard to any provisions of the collective bargaining agreement"; (ii) he "has not sued for breach of the CBA, nor can the CBA be invoked to limit rights arising from facts outside the scope of the CBA"; and (iii) "his claim is not substantially dependent upon analysis or interpretation of the CBA, but arises from state law totally independent of the CBA."

(Pl. Opp. Br. at 10-13).  Plaintiff further argues that "according to the terms of the CBA, only the Union can invoke the principles of grievance and arbitration."  (*Id.* at 11).

The Court finds that Plaintiff's promissory estoppel claim is preempted by § 301 of the LMRA.  Plaintiff's request to transfer back to the New Jersey location falls squarely within the provisions of the CBA—Article 22, Section 6 of the NMA addresses part-time union-represented employee transfer requests.  (D.E. No. 36-5 at 42-43).  Plaintiff's allegation that he was discharged also falls within the provisions of the CBA—Article 47 of the Local Supplement addresses the rights of the parties with respect to the discharge of union-represented employees.  (D.E. No. 36-4 at 20-21).  Plaintiff's argument that "the principles of state law regarding issues of promissory estoppel are applicable without regard to any provisions of the collective bargaining agreement" is unpersuasive.  (Pl. Opp. Br. at 10-13).  The law is clear, as Defendant points out, that any state law cause of action that requires the interpretation of terms of a collective bargaining agreement is preempted by § 301.  *See Allis-Chalmers Corp.*, 471 U.S. at 220; *Voilas*, 170 F.3d at 372.

And Plaintiff's argument that he "has not sued for breach of the CBA" (Pl. Opp. Br. at 13) is immaterial.  Indeed, Plaintiff's opposition notes that "[c]laims in quasi-contract cannot be maintained where a valid contract fully defines the parties' respective rights and obligations." (*Id.* at 13) (citing *Jones v. Marin*, No. 07-0738, 2009 WL 2595619, at *6 (D.N.J. Aug. 20, 2009) (dismissing plaintiff's promissory estoppel claim)).  Moreover, "a court should look not to how the complaint is cast, but whether those claims can be resolved only by reference to the terms of the collective bargaining agreement."  *Fesco v. Darby Dev., LLC*, No. 13-7129, 2014 WL 3556510, at *3 (D.N.J. July 18, 2014); *see also Allis-Chalmers Corp.,* 471 U.S. at 210, 213 ("[T]he pre-emptive effect of § 301 . . . extend[s] beyond suits alleging contract violations" and

includes "state-law rights and obligations that do not exist independently of private agreements."). Plaintiff's promissory estoppel claim is preempted by § 301 because it involves facts relating to his transfer request and his alleged discharge—both governed by provisions in the CBA. Defendant therefore has satisfied its moving burden of establishing that no genuine issue of material fact exists as to preemption and summary judgment is proper as to the First Count. *See, e.g.*, *Pilvalis v. Lockheed Martin Corp.*, No. 12-1354, 2013 WL 1164498, at *11 (D.N.J. Mar. 20, 2013) (finding *pro se* plaintiff's promissory estoppel claim preempted under § 301); *Leonardis v. Burns Int'l Sec. Servs., Inc.*, 808 F. Supp. 1165, 1184 (D.N.J. 1992) (dismissing promissory estoppel claim as preempted by § 301).

### ii.    Plaintiff Failed to Exhaust the Grievance Procedures Specified in the CBA

In support of its summary judgment motion, Defendant also argues that "an employee may not resort to the courts to redress grievances under a collective bargaining agreement until the exclusive remedies under the grievance and arbitration provisions of the agreement have been exhausted." (Def. Mov. Br. at 10-11). Plaintiff's rebuttal that "only the Union can invoke the CBA principles of grievance and arbitration" is unavailing. (Pl. Opp. Br. at 11). "An employee in a bargaining unit having a negotiated grievance procedure . . . may elect to challenge such action by filing a grievance." *Cornelius v. Nutt*, 472 U.S. 648, 652 (1985); *see also Raczkowski v. Empire Kosher Poultry*, 185 F. App'x 117, 119 (3d Cir. 2006) (finding that employee represented by union was required to file his grievance with the union, who then had discretion over whether to file a grievance against the employer). Once an employee follows the proper grievance procedures outlined in the CBA, the union has a statutory duty to fairly represent all employees that are union members. *Vaca v. Sipes*, 386 U.S. 171, 177 (1967); *see also Klimek v. United Steel Workers Local 397*, 618 F. App'x 77, 79, 81 (3d Cir. 2015) (finding

that the union had a duty not to "arbitrarily ignore a meritorious grievance or process it in perfunctory fashion"). The Court finds that Defendant has met its burden of establishing that Plaintiff failed to exhaust the grievance procedures set forth in the CBA and is therefore also entitled to summary judgment as to the First Count based on this alternative argument.

The Supreme Court has held that "[a]n employee seeking a remedy for an alleged breach of the collective-bargaining agreement between his union and employer must attempt to exhaust any exclusive grievance and arbitration procedures established by that agreement before he may maintain a suit against his union or employer under § 301(a) of the Labor Management Relations Act." *Clayton v. UAW*, 451 U.S. 679, 681 (1981). "The function of the court is very limited when the parties have agreed to submit all questions of contract interpretation to the arbitrator." *United Steelworkers of Am. v. Am. Mfg. Co.*, 363 U.S. 564, 567-68 (1960). "[O]nce the court has discerned the parties' intent to submit their underlying dispute to arbitration, any further matters surrounding the dispute are to be submitted to the arbitration procedure." *Bell Atl.-Pa., Inc. v. Commc'ns Workers of Am., AFL-CIO, Local 13000*, 164 F.3d 197, 201 (3d Cir. 1999). The court may only "ascertain[ ] whether the party seeking arbitration is making a claim which on its face is governed by the contract." *Id.* at 568. "In these circumstances the moving party should not be deprived of the arbitrator's judgment, when it was his judgment and all that it connotes that was bargained for." *Id.*

The Third Circuit has routinely dismissed suits in which an employee failed to exhaust either the grievance or arbitration procedures specified in the collective bargaining agreement. *See, e.g.*, *Keck v. PPL Elec. Utilities Corp.*, 99 F. App'x 357, 360 (3d Cir. 2004) (affirming summary judgment in favor of employer because employee neglected to follow the CBA's grievance and arbitration procedures); *Bell Atl.-Pa., Inc.*, 164 F.3d at 201 (ordering parties who

demonstrated an intent to submit their disputes to arbitration to proceed with arbitration); *Wheeler v. Graco Trucking Corp.*, 985 F.2d 108, 112 (3d Cir. 1993) (holding that plaintiff could not bring a claim under §301(a) of the LMRA where he did not follow "the exclusive grievance and arbitration procedures set out in the collective bargaining agreement"); *Eberle Tanning Co. v. Section 63L, FLM Joint Bd., Allegheny Div., United Food & Commercial Workers Int'l Union*, 682 F.2d 430, 434 (3d Cir. 1982) (affirming a § 301 dismissal and recognizing "strong federal policy preferring arbitration of labor disputes").

Here, the CBA outlines clear mandatory grievance and arbitration procedures.  The Local Supplement states that "any controversy, complaint, misunderstanding or dispute arising as to interpretation, application or observance of any of the provisions of this Agreement must be grieved pursuant to the procedures set forth in the CBA."  (D.E. No. 36-4 at 12).  Article 7 of the NMA and Article 47 of the Local Supplement both set forth the procedures for the adjudication of discharges through the parties' agreed-upon grievance procedures.  (D.E. No. 36-5 at 18-19; D.E. No. 36-4 at 20-21).  And both the NMA and the Local Supplement set forth a multi-step grievance and arbitration procedure to resolve disputes that may arise regarding employees covered by the CBA.  (*See* Def. Mov. Br. at 5; D.E. No. 36-5 at 18-22; D.E. No. 36-4 at 12-13).  Indeed, the CBA requires any disputes among the parties to the agreement to be resolved through arbitration: the NMA states that the "arbitrator shall have the authority to apply the provisions of this Agreement and to render a decision on any grievance coming before him/her" (D.E. No. 36-5 at 25-26), and the Local Supplement states that "[t]he decision of the arbitrator shall be final and binding on the parties and employees involved" (D.E. No. 36-4 at 13).

As the Third Circuit has repeatedly held, where there are grievance and arbitration procedures in place—as Defendant has demonstrated here—any disputes as to the interpretation

of rights and obligations of the parties to a collective bargaining agreement must be presented to an arbitrator, not the courts.  *See, e.g.*, *Keck*, 99 F. App'x at 360.  Because it is undisputed that Plaintiff failed to exhaust the grievance and arbitration procedures specified in the CBA, summary judgment for Defendant is proper.

**B.  Second Count: New Jersey Law Against Discrimination**

The Second Count of Plaintiff's Second Amended Complaint asserts a claim of religious discrimination under the New Jersey Law Against Discrimination, N.J.S.A. 10:5-1, *et seq.*  (Sec. Am. Compl., Second Count ¶¶ 1-12).  Plaintiff alleges that "the termination of his employment, in accordance with the facts set forth in the First Count, was caused in part by the hostility expressed towards him as a Muslim."  (*Id.* ¶ 10).  Defendant argues that both counts of Plaintiff's Complaint are preempted by federal law.  (Def. Mov. Br. at 1).  Plaintiff's opposition, however, nowhere addresses Defendant's argument that the Second Count is also preempted by federal law.  (Def. Reply Br. at 7).  Indeed, in the only two cases Plaintiff cites that seem to address this issue, the courts dismissed the discrimination claims as preempted by § 301.  (Pl. Opp. Br. at 19-20 (summarizing *Fesco*, 2014 WL 3556510 and *Montez v. Operating Engineers Local Union Member 3*, No. 10-00217, 2010 WL 2900830 (D. Haw. July 23, 2010)).

The Supreme Court has held that "when resolution of a state-law claim is substantially dependent upon analysis of the terms of an agreement made between the parties in a labor contract, that claim must either be treated as a § 301 claim or dismissed as pre-empted by federal labor-contract law."  *Allis-Chalmers Corp.*, 471 U.S. at 220.  Even suits based on torts, rather than on breach of collective bargaining agreements, are governed by federal law if their evaluation is "inextricably intertwined" with consideration of the terms of a labor contract.  *Id.* at 213 (analyzing "whether evaluation of the tort claim is inextricably intertwined with

consideration of the terms of the labor contract"); *see also Fesco*, 2014 WL 3556510, at *3 (dismissing with prejudice plaintiff's New Jersey Law Against Discrimination claim as preempted by § 301).

The Court's inquiry therefore is whether Plaintiff's religious discrimination claim is "inextricably intertwined" with the CBA.  *See Allis-Chalmers Corp.*, 471 U.S. at 213; *Fesco*, 2014 WL 3556510, at *3.  Here, Plaintiff alleges that "the termination of his employment, *in accordance with the facts set forth in the First Count*, was caused *in part* by the hostility expressed towards him as a Muslim."  (Sec. Am. Compl., Second Count ¶ 10).  As the Court previously noted, the First Count of Plaintiff's Second Amended Complaint is preempted by § 301 of the LMRA—the First Count requires interpretation of the CBA, and Plaintiff also failed to exhaust the grievance and arbitration procedures specified in the CBA.  (*See* D.E. No. 36-5 at 42-43; D.E. No. 36-3 at 2).  As such, to evaluate the Second Count "in accordance with the facts set forth the in First Count"—as Plaintiff has requested in the Second Amended Complaint—the Court must necessarily interpret the CBA because the First Count requires such interpretation.

Moreover, Plaintiff does not argue that religious discrimination was an independent reason for his termination.  Rather, Plaintiff asserts his termination was caused "in part" by the hostility expressed towards him as a Muslim.  As such, Plaintiff's own language reaffirms that the Second Count is "inextricably intertwined" with the First Count, and thus "inextricably intertwined" with the CBA.  Because the Second Count cannot be resolved independently of the First Count, Defendant is also entitled to summary judgment on Plaintiff's Second Count.

IV.    **CONCLUSION**

For the foregoing reasons, the Court grants Defendant's motion for summary judgment.[3]

Plaintiff's Second Amended Complaint is hereby dismissed *with prejudice*.   An appropriate

Order accompanies this Opinion.

s/Esther Salas
**Esther Salas, U.S.D.J.**

---

[3]      Because the Court grants Defendant's motion for summary judgment under Federal Rule of Civil Procedure 56, it need not address Defendant's alternative arguments under Federal Rule of Civil Procedure 12(b)(6).